UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                          17 CR 509 (RA)

PAUL HAVERKAMP,

          Defendant.

------------------------------x

                         New York, N.Y.
                         December 14, 2018
                         3:05 p.m.

Before:

                HON. RONNIE ABRAMS,

                         District Judge

                  APPEARANCES

GEOFFREY S. BERMAN
    United States Attorney for the
    Southern District of New York
ALINE R. FLODR
    Assistant United States Attorney

FEDERAL DEFENDERS OF NEW YORK INC. (NYC)
    Attorneys for Defendant
BY:  JULIA L. GATTO

ALSO PRESENT: Aaron Spivack, FBI

 1              (Case called)

 2              THE DEPUTY CLERK:  Counsel, please state your name for

 3    the record.

 4              MS. FLODR:  Good afternoon, your Honor.  Aline Foldr

 5    on behalf of the United States, and with me at counsel table is

 6    Special Agent Aaron Spivack.

 7              THE COURT:  Good afternoon.

 8              MS. GATTO:  Good afternoon, your Honor.  Federal

 9    Defenders of New York by Julia Gatto for Mr. Haverkamp.

10              THE COURT:  Good afternoon.

11              Good afternoon to you, Mr. Haverkamp.

12              So this matter is on for sentencing.  Mr. Haverkamp

13    pled guilty on June 15 before Magistrate Judge Gorenstein to

14    receipt and distribution of child pornography and possession of

15    child pornography, and I accepted that plea on June 29.

16              In connection with today's proceeding, I've reviewed

17    the following submissions:  The presentence investigation

18    report which was revised as of December 7; Mr. Haverkamp's

19    sentencing memorandum dated November 29 with various

20    accompanying exhibits; the government's sentencing memorandum

21    dated December 7 with an accompanying exhibit; and victim

22    impact statements which were submitted on June 21, June 26, and

23    September 25.

24              Have the parties received each of these submissions?

25              MS. FLODR:  Yes, your Honor.

ICEXHAVS

3

1          MS. GATTO:  Yes, your Honor.

2          THE COURT:  So let's begin by discussing the

3  presentence report which was prepared by the United States

4  Probation Office.

5          Ms. Gatto, have you reviewed the presentence report

6  and discussed it with your client?

7          MS. GATTO:  I have, your Honor.

8          THE COURT:  Other than the five-point enhancement

9  pursuant to guideline Sentence 2G2.2(b)(5) which is discussed

10  at paragraph 54 of the presentence report, do you have any

11  other objections to the report?

12          MS. GATTO:  I do not, your Honor.

13          THE COURT:  Mr. Haverkamp, have you read the

14  presentence report and had enough time to discuss it with your

15  attorney?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  Thank you.

18          Does the government have any objections to the report?

19          MS. FLODR:  No, your Honor.

20          THE COURT:  So the Court adopts the factual findings

21  in the report.  The presentence report will be made a part of

22  the record in this matter and placed under seal.  If an appeal

23  is taken, counsel on appeal may have access to the sealed

24  report without further application to the Court.

25          Mr. Haverkamp, when you pled guilty in June, you

 1    discussed the federal sentencing guidelines with

 2    Magistrate Judge Gorenstein.

 3              THE DEFENDANT:  Yes, your Honor.

 4              THE COURT:  And as he noted then and as you know, they

 5    are a set of rules.  They're published by the United States

 6    Sentencing Commission.  Just for those of you who don't know

 7    what they are, they are contained in this book here, and

 8    they're designed to guide judges when judges impose sentence.

 9              Although at one time the guidelines were mandatory,

10    meaning that judges were required to follow them, they're no

11    longer binding on judges.  But nonetheless, judges must

12    consider them when determining an appropriate sentence.

13              So, Ms. Gatto, just to confirm, you agree with the

14    guidelines calculation in the Pimentel letter; correct?

15              MS. GATTO:  I do.

16              THE COURT:  Do you want to be heard further on the

17    applicability of the five-point enhancement?

18              MS. GATTO:  Unless the Court wants to hear from me.  I

19    think the position is clear in our papers.  But to the extent

20    it isn't --

21              THE COURT:  No.  I think it is, and I understand that

22    the government takes no position on it.  Ultimately I think

23    that there is insufficient evidence in the record to support

24    the enhancement.  So I'm not going to apply the enhancement.

25              In light of that conclusion, I do adopt the guidelines

1    range outlined in the Pimentel letter, and I find that

2    Mr. Haverkamp's offense level is 32, his criminal history

3    category is I, and his recommended guideline sentence is 121 to

4    151 months in prison.

5          As you know, there's a mandatory minimum sentence of

6    60 months, of five years.  As I said a moment ago, the

7    guidelines range is only advisory.  Courts may impose a

8    sentence outside of that range based on one of two legal

9    concepts, a departure or a variance.

10          A departure allows for a sentence outside of the

11    advisory range based on some provision of the guidelines

12    themselves.  I understand that the defendant is not seeking a

13    departure but, rather, just a various pursuant to the factors

14    set forth in 18 U.S. Code, Section 3553(a).

15          Is that right?

16          MS. GATTO:  Yes, your Honor.

17          THE COURT:  Nonetheless, I've considered whether there

18    is an appropriate basis for departure from the advisory range

19    within the guidelines and conclude that no such grounds exist.

20    I do though, as I said, have the power to impose a

21    non-guideline sentence pursuant to a variance when I think it's

22    appropriate to do so.

23          I'll hear from the parties now.

24          Would the government like to be heard with respect to

25    sentencing?

1          MS. FLODR:  Yes, your Honor, briefly.  As the

2     government has set out in its sentencing submission, the

3     conduct at issue here, the offense conduct, is extremely

4     serious.

5          This is one of those crimes that, you know, should be

6     punished across the distribution chain, not just the people who

7     actually produce and create this heinous material but also the

8     people like Mr. Haverkamp who were responsible for distributing

9     hundreds of these images and videos reflecting some of the

10    worst, most egregious forms of child pornography in this case,

11    including depictions of masochism and sadistic actions taken

12    against prepubescent children.

13         In this case, moreover, after an electronic forensic

14    review of his electronic devices, the FBI was able to find that

15    Mr. Haverkamp spoke to over 70 other KIK users where there was

16    evidence that he was discussing the distribution of child

17    pornography with those users.

18         Unfortunately, we were never able to make sure or

19    conclusively determine that he in fact did distribute, but

20    there is evidence and admissions from the defendant himself

21    where he did say that he also engaged individuals who

22    identified themselves as young as 14 years old, 13-year-olds,

23    to have them distribute child pornography to him, either

24    already produced or of themselves.

25         So he also engaged, according to him, in the request

1    for the creation of new child pornography from these

2    individuals that he was having these discussions with.

3              THE COURT:  Can I just follow up on that.

4              So in your letter, you note that.  So you say that the

5    defendant admitted that he communicated with at least five

6    minors from whom he requested pornography and to whom he may

7    have sent nude pictures of himself.

8              MS. FLODR:  Yes.

9              THE COURT:  And then later, a couple lines later, you

10   say:  "Even more alarmingly, the defendant's interest in

11   children went well beyond mere fantasy as the defendant

12   self-reported having multiple contacts with young teenagers,

13   including a 14-year-old girl he met on KIK, a 14-year-old boy

14   that the defendant met in a school parking lot to engage in

15   mutual masturbation, and a girl who he met online who had

16   claimed to be 17 but ultimately turned out to be 13 years old."

17             Then it goes on to discuss the abuse of his

18   stepbrother when he was 13 or 14, when Mr. Haverkamp was, and

19   the child was two years old.

20             Just to be clear, aside from the 14-year-old boy or

21   boy who appears to be 14 with whom he engaged in mutual

22   masturbation, did he actually meet the 14-year-old girl and the

23   13-year-old girl?  Did he meet them?

24             MS. FLODR:  Give me one moment, your Honor, to

25   confirm.

1          THE COURT:  Sure.  I'm sorry to interrupt.  Are these

2   people categorized in the group of five minors from whom he

3   sought child pornography?

4          MS. FLODR:  I believe it's the latter, your Honor, but

5   let me confirm.

6               (Discussion off the record)

7          MS. FLODR:  Your Honor, I have confirmed with

8   Special Agent Aaron Spivack, and it's actually the only contact

9   that he admitted to like in person was the 14-year-old boy and

10  of course his stepbrother.  The other two individuals that were

11  listed in the sentence that your Honor just read were

12  individuals that he engaged in these conversations online with.

13         THE COURT:  That's what I thought.  The way the

14  sentence was structured, I just wanted to make sure that was

15  accurate.

16              Please proceed.

17         MS. FLODR:  Your Honor, I think that is the crux of

18  the government's position as to why in this case we believe

19  that although we have requested that based on other

20  circumstances, that your Honor give a below-guideline sentence

21  of below the 121 months, we also think that given the offense

22  conduct in this case and the fact that this is distribution but

23  distribution of the highest kind, of hundreds of images, as

24  well as videos, we believe that a substantial term of

25  imprisonment above the 60-month mandatory minimum is warranted

 1    in this case.

 2            THE COURT:  All right.  Thank you.

 3            Do any victims wish to be heard?  I've obviously read

 4    the victim impact statements, but do any victims wish to be

 5    heard today?

 6            MS. FLODR:  Your Honor, we have not heard from any

 7    victims.  They have all been notified that this proceeding was

 8    happening today.

 9            THE COURT:  All right.  Thank you.

10            Ms. Gatto, would you like to be heard?

11            MS. GATTO:  Yes, your Honor.  Let me just start by

12    pointing out that Mr. Haverkamp's mother has flown in from

13    Michigan.  She's here in the audience, along with the social

14    worker from my office who's been working very closely with

15    Mr. Haverkamp, as well as the paralegal who works on the case.

16            THE COURT:  Thank you all for being here today.

17            MS. GATTO:  What's important and what I would really

18    like to focus on is the conduct is very serious, and there is

19    no one on this side -- and I know that Mr. Haverkamp wants to

20    speak directly to the Court about it.  There is no one on this

21    side that denies that.  It's disturbing.  It's serious.  It's

22    worthy of punishment.  There is no question about that.

23            This is a case with a five-year mandatory minimum.

24    I'm sure the Court has seen cases similar, similar charges

25    without that five-year mandatory minimum.

1          I think part of the five-year mandatory minimum is

2    because the conduct is serious.  His history does certainly go

3    beyond just looking at material, and I think that the five-year

4    mandatory minimum captures that.

5          What I'd like to focus on, and I think that this is

6    important.  You see this in lots of cases -- I have -- where

7    there's a fragility to the human, a sickness, something that

8    can be addressed.  And there have been points in

9    Mr. Haverkamp's life where I think there could have been

10   intervention, and there was none.

11         He really -- he's needed treatment and counseling of a

12   profound nature for a very long time.  He was exhibiting

13   troubling behavior at a very young age.  He clearly wasn't

14   processing difficult things that were happening in his life

15   starting from when he himself was a minor, but it was repressed

16   as a whole confluence of reasons why, and I'm not sure that we

17   need to get into that.

18         I think the point is there has been no help for him,

19   and this is an individual that is incredibly poised to take in

20   help.  And I want him desperately to talk to the Court because

21   this is an individual -- when you speak to him, it is clear he

22   is very self-reflective.  He is very thoughtful.  He is very

23   remorseful, and he's also very in need and able to take help.

24         THE COURT:  It took an arrest to make him so

25   self-reflective and thoughtful?

1    MS. GATTO:  I think so.  Maybe it is worthy to go

2    through the reasons why he repressed it all.  I think that

3    because of his background, largely a very conservative

4    Christian background, there was this lesson from early on, just

5    push it down.

6         When you're pushing it that down, when it comes up, it

7    comes up in really disgusting, awful ways.  So, yes.  I think

8    that the solitariness of prison, the guidelines ranges that

9    have been going from ten years to 210 months -- I think all of

10   that process -- the FBI coming in and him sitting down.  I know

11   he'll talk about that moment with the Court.

12        All of that is yeah, I need help.  He wasn't given

13   outlets to turn to.  I'm not saying that minimizes it.  I'm not

14   saying any of that.  I'm just saying that this is someone who

15   can be helped.  And part of this system is not just punishment,

16   but it's rehabilitation for two reasons.  It's for him and for

17   the public.

18        We keep individuals in jail for incapacitation to

19   protect the public but also to make them in a place where they

20   can go back and reenter safely, transition.  And this

21   individual is going to be able to do that.

22        He has not been receiving sex offender specific

23   treatments right now because they're not available at the MCC.

24   Yet he's still trying to take advantage of everything he can.

25   He has worked more closely with my social workers than any

1      individual I've been working with.

2              He participates in all the activities -- journaling,

3      diary writing, counseling sessions with them.  He's the one who

4      said to me, can you give me more information about what the sex

5      offender treatment programs in the BOP look like.  And it's the

6      first time I've really dug deep into them.

7              THE COURT:  I was going to ask a question about that.

8      You referenced in your letter that he won't get treatment, that

9      kind of treatment, until the last three years of his sentence.

10     Is that right?

11             MS. GATTO:  Yes.

12             THE COURT:  So if he's sent to a place like Butner,

13     you've confirmed that he won't actually get any kind of

14     treatment, sex offender treatment, until the last three years

15     of his sentence?

16             MS. GATTO:  Butner, there's treatment, but it's not

17     sex offender specific, your Honor.  It's not the inpatient

18     program.  So the inpatient program that is designed exactly for

19     the frailty that is at the base here is not at Butner.  It's at

20     Devens and Marion.  And that is only available in the last

21     three years, and it's an intensive three year program.

22             Will he receive no treatment?  Hopefully he'll get

23     mental health treatment, but it's going to be far more generic.

24     I'm not saying it won't be useful.

25             THE COURT:  Even at the facilities where there's a

 1      large population of sex offenders?

 2              MS. GATTO:  I don't know if their mental health

 3      counseling is now being focused on that, but it's certainly not

 4      sex offender specific treatment.

 5              Now, they may -- I know that there are other

 6      facilities where there's a lodger population of sex offenders.

 7      As that population grows in more general population facilities,

 8      if their counselors are responding, that I certainly haven't

 9      confirmed, and I don't know.

10              But the sex offender specific programs that have been

11      designed for sex offenders when they're in or out that are

12      designed to go to the roots that you sometimes universally,

13      those are only at Devens and Marion.  They're inpatient

14      programs, and they're only available for the last three years.

15              I think it's very compelling, your Honor, that there

16      could be -- our proposal, which is a very significant

17      sentence -- five years is not a short period of time.

18              This is an individual whose never been in jail.  This

19      is certainly an individual who has issues, who's committed

20      crimes, who has certainly on the ledger of wrongfulness things

21      to report but also on the ledger of worthiness things to

22      report.

23              He's always been employed.  He was married.  He has

24      relationships in the communities that I think speak to his

25      character.  He's involved in volunteering even at the prison.

1          As soon as he got in there, he got himself on the

2     suicide watch team which is a work detail different than the

3     kitchen.  It's much more emotional.  It's something he's really

4     derived value out of helping other humans.

5          So for this individual, I don't want to minimize and

6     just say, oh, just because I'm asking for the mandatory

7     minimum, this isn't a long term.  It is a longer term of

8     imprisonment.

9          THE COURT:  It is a long term.  He's young.  So even

10    if he got a guideline sentence, if he got good time, he'd be

11    out in his 30's.

12          MS. GATTO:  Sure, your Honor.

13          THE COURT:  I'm not minimizing the length of that

14    sentence in any way.  I'm just putting it in the perspective of

15    how old he is.  But I agree with you a hundred percent that a

16    five-year sentence is a long sentence.

17          MS. GATTO:  Yes.  And it's I think also helpful always

18    for my clients to hear that there's hope, to know that you're

19    going to get out when you're still young.  But that's the thing

20    that I have really watched in Mr. Haverkamp which I admire is

21    this is an optimistic, hopeful person, a realist who has

22    expressed multiple times, I need help.  I want help.  I don't

23    want to return to this behavior.

24          A sentence of five years in jail, all of the rest of

25    it, which will be spent in an intensive program that is

1   designed for someone with these issues and then five years of

2   supervised release to go immediately from the inpatient program

3   focused treatment to transitioning into the community with

4   outpatient, with monitoring devices, which is the kind of

5   seamless transition from the inpatient to the outpatient

6   setting, what we're asking for, your Honor, would be -- it's

7   going to be eight years of treatment, the sentence I'm

8   proposing, five of those being spent in an incarceratory

9   setting and the rest spent on supervision.

10          So it is a minimal sentence when you look at all of

11  the reasons we sentence someone, including punishment,

12  incapacitation.  But it's a meaningful sentence when we look at

13  the purposes of rehabilitation and what that means for

14  deterrence, specific deterrence, and protecting the public.

15          So I've thought long and hard.  I know these cases are

16  difficult for a million reasons, a million reasons, including

17  that the guidelines don't really, as the Second Circuit has

18  recognized, provide the same kind of guidance it does in other

19  cases because the numbers are so high.  Sometimes we lose sight

20  when we see what high numbers, what a proportionate sentence

21  is.

22          Having said all that, your Honor, I think that five

23  years is sufficient but not greater than necessary.

24          THE COURT:  All right.  I just have one question about

25  your letter, your submission.

1      It seems like you said a number of times that he's not

2   a pedophile, and I don't think we need to debate exactly what

3   that means and if he is or if he isn't.  But he clearly has

4   sexual interest in children, and even the report noted his

5   sexual interest in and arousal with respect to an

6   eight-year-old girl and even after noting the results of the

7   Abel assessment, noted that it doesn't explain his track record

8   of seeming sexual interest in children.

9      MS. GATTO:  I think absolutely it's always hard, but

10  it's hard to understand his Abel results with the conduct, but

11  what I really think is happening here -- and this is supported

12  by Dr. Prenky (phonetic) and our social workers' evaluation --

13  is that this is somebody who was participating in the

14  possession and distribution of child pornography, participating

15  in the online community of people who were exchanging this

16  stuff, less because of a sexual interest, but there's a

17  confused sexuality component of course, but more this

18  community, this idea of someone who was socially inept finding

19  a place of what he would call deviants like himself online.

20      It is less about a desire to do the things he sees, to

21  do the things that other people in those chatrooms are talking

22  about, and more the desire to feel accepted because he's always

23  felt different.  He's always been embarrassed and shamed by his

24  sexuality because of the various constellation of events from

25  his childhood.  And it's less about his desire to engage in

1    sexual contact with a minor.

2            THE COURT:  Although he has engaged in sexual contact

3    with a minor.

4            MS. GATTO:  Yes, your Honor.

5            THE COURT:  I know.  Thank you.

6            Mr. Haverkamp, I'm happy to hear anything you'd like

7    to say today.

8            THE DEFENDANT:  Thank you, Judge Abrams.

9            I want to say that what I did was wrong.  My conduct

10   was disgusting; disgraceful; and most of all, hurtful.  I want

11   to express my remorse to all the people that I have hurt.

12           I'm here today to tell you that I will never commit

13   this behavior again.  I just have nothing but regret for my

14   actions, and knowing how much I hurt the people closest to me,

15   I never want to hurt them again.  And I never want to hurt

16   anyone else in the future.

17           Along with that, I also want to let you know that I

18   don't ever want to go back to the person who I used to be

19   before that morning when the FBI came in my door.  I was

20   ignoring my problems, I wasn't taking responsibility, and I

21   wasn't making efforts to get better.

22           Even though that morning was rock bottom for me, since

23   then, I have just been trying as hard as I possibly can to take

24   responsibility and to seek out treatment and, with treatment,

25   to start working with those skills, making them part of my

1    daily routine, and try to get better.

2            Now that I've been spending weekly sessions with a

3    social worker, I have been noticing some improvement.  I know

4    that I still have a long way to go.  I feel that I would

5    benefit from more therapy and more intensive programming for

6    sex offenders.

7            I know that I need to stay with this and not just

8    through the remainder of my prison time, but I need to stay

9    with this treatment and counseling long after and beyond the

10   supervised release and even beyond then.

11           I know that I have so much more work to do, but I know

12   that not only do I owe it to the people that I hurt, but I owe

13   it to myself to get better, and I never want to go back to the

14   person who ignores problems.

15           That's just what I wanted you to know today, that what

16   I did was absolutely wrong.  My iconic was terrible, and I will

17   always regret it.  But at the same time, knowing that I've

18   started to improve with my mental health, as well as my

19   physical and spiritual health, I just don't want to go back to

20   where I was before.

21           I like the improvement that I've already been making,

22   and I just want to keep on going down that right path so I can

23   return to society, be a functioning member of my community.

24   And I want to be a healthy person.

25           THE COURT:  All right.  Thank you.

1        I hope what you said is true.  I hope you continue to

2   participate in this kind of not only self-reflection but

3   therapy and other programs that may be of assistance, and I

4   hope that they ultimately are of assistance.

5        So in imposing sentence, I'm required to consider the

6   advisory guidelines range of 121 to 151 months in prison, but I

7   cannot and do not presume that a guideline sentence is

8   reasonable.  Rather, I must make my own independent review of

9   the factors that are outlined in a provision of the law.  It's

10  18 U.S. Code, Section 3553(a), and I have done so.

11       Those factors include but are not limited to the

12  nature and circumstances of the offense and the personal

13  history and characteristics of the defendant.

14       Judges are also required to consider the need for the

15  sentence imposed to reflect the seriousness of the offense,

16  promote respect for the law, provide just punishment for the

17  offense, afford adequate deterrence to criminal conduct,

18  protect the public from future crimes of the defendant, and

19  avoid unwarranted sentencing disparities among other things.

20       So first I've considered the nature and circumstances

21  of the offense which I think we all agree is undoubtedly a

22  serious one.  In the month alone when Mr. Haverkamp was

23  corresponding with the undercover officer, he exchanged over

24  400 messages and sent approximately 35 images and video files

25  depicting the sexual abuse and exploitation of prepubescent

 1   children including infants and toddlers.

 2           Among the many horrific images of the ones that I

 3   viewed are the ones of a child aged one to two wearing a diaper

 4   with an adult man forcing his erect penis in her mouth and of a

 5   six- to eight-year-old tied to a pole with a red gag ball in

 6   her mouth.

 7           Mr. Haverkamp was trading these images, the

 8   memorialization of rape and molestation and abuse of the most

 9   vulnerable among us like they were baseball cards.

10           I've read the victim impact statements from the

11   victims depicted in some of these images who describe not only

12   how the initial abuse by their family members or caretakers or

13   other people in their lives who abused their trust had that

14   initial abuse not only destroyed their lives, but how they feel

15   victimized all over again every day by people like

16   Mr. Haverkamp who pass along these images, these videos and

17   images of the torment of these children for their enjoyment.

18           In my view, a serious sentence must be imposed to

19   provide just punishment and to try and deter others from

20   keeping this grotesque market -- to keep it from staying alive.

21           The defendant also sent photos of his minor nieces and

22   nephews, albeit clothed, to the undercover to continue

23   conversations about engaging in hands-on contact with children.

24           In asking that he be sentenced to the full extent of

25   the law, the mother of three of those children, the sister of

1    his wife, noted that while she doesn't believe that he

2    physically abused her children, he often sought to be alone

3    with her children who are now aged nine, seven, and two.

4           After a search warrant was executed, Mr. Haverkamp

5    admitted to trading in child pornography with approximately 50

6    other individuals and exchanging over 20 cloud links with child

7    pornography.

8           According to the presentence report, the FBI has

9    identified over 70 KIK users with whom he had thousands of

10   lines of chat and to whom it appears that he distributed child

11   pornography.  That said, we don't know the full scope of the

12   defendant's conduct because he deleted the KIK accounts before

13   the FBI executed its search.

14          Even more troubling, Mr. Haverkamp admitted to

15   sexually abusing his two-year-old stepbrother when he himself

16   was 13 or 14; to engaging in what was described as mutual

17   masturbation with a boy he believed to be 14 when he,

18   Mr. Haverkamp, was 25; as well as to communicating with at

19   least five minors online from whom he requested nude pictures

20   encouraging them to create their own child pornography.

21          In light of this conduct, the sentence imposed must

22   reflect the seriousness of the offense; afford adequate

23   deterrence, both specific and general; and protect the public

24   from future crimes of this defendant.

25          I've also considered all of the arguments made by

1    defense counsel, including that this is Mr. Haverkamp's first

2    criminal conviction; that he has accepted responsibility for

3    his crimes.

4            He appears to be genuinely remorseful, which I don't

5    doubt; that he's interested in improving himself and in

6    rehabilitating himself, which I also don't doubt at this moment

7    in time.

8            And I'll also note that while he's been at the MCC,

9    he's volunteered to be a companion to incarcerated individuals

10   on suicide watch and is tutoring individuals who are studying

11   for their GED, and those are all impressive activities and good

12   things to be doing.

13           I've read the letters submitted by family and friends

14   and members of the defendant's community.  I've considered not

15   only the obstacles Mr. Haverkamp faced growing up, but I've

16   considered the collateral consequences of being designated a

17   sex offender.

18           Finally, I've considered the need to avoid unwarranted

19   sentencing disparities, and I've reviewed the cases cited by

20   the defendant.  I'll just note, however, that this circuit has

21   approved numerous sentences for possession and distribution of

22   child pornography akin to the one within this guidelines range,

23   including those which didn't involve in-person or even any

24   contact with children.  See e.g. *United States v. Forrest*, 639

25   F. App'x 30 at 34.  That's the Circuit from 2016 affirming a

1    sentence of 151 months for a defendant who was convicted of

2    distributing child pornography where his personal history did

3    not include sexual contact with children.

4           *United States v. Light*, 2018 WL 6179010 at 1.  That's

5    the Circuit from 2018 affirming a sentence of 151 months'

6    imprisonment which was within the guidelines range for a

7    defendant convicted of child pornography possession where the

8    defendant did not have contact with any children.

9           And *United States v. Pulsifer*, 469 F. App'x 41 at 43,

10   the Circuit in 2012 affirming a sentence of 121 months'

11   imprisonment for transporting and distributing child

12   pornography where the defendant's only sexual contact with

13   children was over a webcam.  So I've considered all those

14   factors, and I am ready to impose sentence.

15          Mr. Haverkamp, could you please rise.

16          It's the judgment of this Court that you be committed

17   to the custody of the Bureau of Prisons for a term of 121

18   months on each count to run concurrently to be followed by a

19   term of supervised release of five years on each count also to

20   run concurrently.

21          I believe this sentence is sufficient but not greater

22   than necessary to comply with the purposes of sentencing set

23   forth in the law.  If you'd like, you can be seated while I

24   read the conditions of your supervised release, as well as the

25   other details of your sentence.

 1            All the standard conditions of supervised release

 2   shall apply.  They're on page 32 and 33 of the presentence

 3   report.  I'm not going to read them aloud unless someone wants

 4   me to.

 5            The mandatory conditions of supervised release shall

 6   apply.  You must not commit another federal, state, or local

 7   crime.  You must refrain from any unlawful use of a controlled

 8   substance.

 9            The probation department recommends that the drug

10   testing condition be suspended based on its determination that

11   you're a low risk of future substance abuse.  So I'll suspend

12   that normally mandatory condition.

13            You must cooperate in the collection of DNA as

14   directed by the probation officer.  And you must comply with

15   the requirements of the Sex Offender Registration and

16   Notification Act, 42 U.S. Code, Section 16901, as directed by

17   the probation officer, the Bureau of Prisons, or any state sex

18   offender registration agency in which you reside, work, are a

19   student, or were convicted of a qualifying offense.

20            In addition, the probation department recommends

21   certain special conditions of supervised release.  I'm going to

22   impose some but not all of them.

23            So you'll be supervised in the district of your

24   residence.  You must not have deliberate contact with any child

25   under 18 years of age unless approved by the probation

1    department.

2            You must not loiter within 100 feet of schoolyards,

3    playgrounds, arcades, or other places primarily used by

4    children under the age of 18.

5            In addition, you must undergo a sex offense specific

6    evaluation and participate in an outpatient sex offender

7    treatment and/or outpatient mental health treatment program

8    approved by the United States Probation Office.

9            You must abide by all rules, requirements, and

10    conditions of the sex offender treatment program, including

11    submission to polygraph testing.

12            You must waive your right of confidentiality in any

13    records for mental health assessment and treatment imposed as a

14    consequence of this judgment to allow the probation officer to

15    review your course of treatment and progress with the treatment

16    provider.

17            You must contribute to the cost of services rendered

18    based on your ability to pay and the availability of

19    third-party payments.

20            The Court authorizes the release of available

21    psychological and psychiatric evaluations and reports,

22    including the presentence investigation report, to the sex

23    offender treatment provider and/or mental health treatment

24    provider.

25            You must submit your person, residence, place of

business, vehicle, and any property, computers as defined in

18 U.S. Code, Section 1030(e)(1), electronic communications,

data storage devices and/or other media under your control to a

search on the basis that the probation officer has reasonable

suspicion that contraband or evidence of a violation of the

conditions of your supervised release may be found.

This search must be conducted at a reasonable time and

in a reasonable manner.  Failure to submit to a search may be

grounds for revocation.  You must inform any other residents

that the premises may be subject to search pursuant to this

condition.

Finally, with respect to the conditions of your

supervised release, you must participate in the computer

Internet monitoring program administered by the U.S. Probation

Office.

You must provide the U.S. Probation office advance

notification of any computers, automated services, or connected

devices that will be used during the term of supervision and

that can access the Internet.

The U.S. Probation Office is authorized to install any

application that's necessary to survey all activity on

computers or connected devices owned or operated by you.

You may be required to pay the cost and monitoring

services at the monthly rate provided by the U.S. probation

officer.  The rate and payment schedule are subject to periodic

27

 1   adjustments by the U.S. Attorney's Office.

 2           The U.S. Probation Office shall be notified via

 3   electronic transmission of impermissible suspicious activity or

 4   communications occurring on such computer or connected device

 5   consistent with the computer monitoring policy in effect by the

 6   probation officer as triggered by impermissible suspicious

 7   activity.  You must consent to and cooperate with unannounced

 8   examinations of any computer equipment owned or used by you.

 9           The examination shall include but is not limited to

10   retrieval and copying of all data from the computer, connected

11   devices, storage media, and any internal or external

12   peripherals and may involve removing of such equipment for the

13   purpose of conducting a more thorough inspection.

14           I'm going to impose the fine under the Justice for

15   Victims of Trafficking Act of 2015.  So that's $5,000 per

16   count.  So that's a $10,000 fine.  Unless there's an objection

17   from the parties, I'll order the schedule.

18           Is the government proposing a particular schedule for

19   this, or is there one in the PSR?

20           MS. FLODR:  Your Honor, are you speaking about the

21   fine or the restitution?

22           THE COURT:  I was actually just talking about the fine

23   for the time being.  I think restitution you wanted some

24   additional time; is that right?

25           MS. FLODR:  Yes, your Honor.  We do not have a

```
 1    schedule, and I don't think it's included as far as I saw for

 2    the fine in the PSR.

 3              THE COURT:  Is there any one you would propose?

 4              MS. FLODR:  Your Honor, I don't have a schedule to

 5    propose for this.

 6              THE COURT:  Do you have a request with respect to the

 7    fine, Ms. Gatto?  If not, I just won't put anything in there

 8    for now.

 9              MS. GATTO:  I don't.

10              THE COURT:  I'm required to impose the mandatory

11    special assessment of $200 or fee, and that shall be paid

12    immediately.

13              As I said, I understand that the parties are trying to

14    work out an agreement with respect to restitution.  So why

15    don't you get back to me on that within 30 days if you could.

16    And if we need to have a hearing, we'll do that.

17              The government is not seeking forfeiture in addition

18    to restitution.  Is that correct?

19              MS. FLODR:  Your Honor, we are in fact seeking

20    forfeiture.  We have handed up a preliminary order of

21    forfeiture that has been signed by our office.

22              THE COURT:  I see it now.  I'm sorry.  I had not seen

23    it.  So just give me a minute to read that.

24              (Pause)

25              THE COURT:  I'll just note for the record that it's a
```

1    consent preliminary order of forfeiture.

2           I'll just note that I'm going to make this consent

3    preliminary order of forfeiture part of the judgment.  In it,

4    among other things, the defendant is consenting to the

5    forfeiture of all his right, title, and interest in the

6    following specific property:  One HTC cellular telephone.

7    Actually, two HTC cellular telephones, and they bear different

8    serial numbers.  This constitutes property obtained from the

9    offenses or property used or intended to be used to commit the

10   offenses charged in Counts One and Two of the indictment.  I'm

11   going to sign off on this as well.

12          Does either counsel know of any legal reason why this

13   sentence cannot be imposed as stated?

14          MS. FLODR:  No, your Honor.

15          MS. GATTO:  Your Honor, for purposes of the record, we

16   think that this sentence is far greater than necessary, but

17   other than that, no, your Honor.

18          THE COURT:  That's the sentence of this Court.  You

19   have a right to appeal your conviction and sentence,

20   Mr. Haverkamp, except to whatever extent you may have validly

21   waived that right as part of your plea agreement.

22          If you do choose to appeal, the notice of appeal must

23   be filed within 14 days of the judgment of conviction.  If

24   you're not able to pay for the costs of an appeal, you may

25   apply for leave to appeal in forma pauperis which simply means

```
 1    that court costs such as filing fees will be waived.  If you

 2    request, the clerk of court will prepare and file a notice of

 3    appeal on your behalf.

 4              Are there any open counts or underlying indictments

 5    that need to be dismissed?

 6              MS. FLODR:  No, your Honor, not at this time.  But one

 7    minor correction to the record.  Mr. Haverkamp did not plead

 8    guilty pursuant to a plea agreement.  He pled guilty pursuant

 9    to a Pimentel.

10              THE COURT:  That is correct.  So thank you for

11    clarifying that.

12              So there are no limits on your right to appeal, and

13    that should be clear for the record.

14              Mr. Haverkamp, as I said, I view this conduct as very

15    serious, but I meant what I said.  I hope that this

16    self-reflection that you spoke about and the work that you're

17    doing and the work that you will do when you're in more formal

18    treatment is really helpful to you.

19              I hope you're able to turn your life around and avoid

20    contact with any of this kind of material and, in particular,

21    any contact with children that may endanger them.  But I wish

22    you luck with that effort.

23              Are there any other applications?

24              MS. FLODR:  No, your Honor.

25              MS. GATTO:  Your Honor, if you can make a
```

1   recommendation that he be placed in an inpatient sex offender

2   treatment program as available through the BOP.

3            THE COURT:  Yes.  Absolutely.  I'll make that

4   recommendation.  Thank you.  We're adjourned.

5            (Adjourned)